IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| XW and KRW, by their next friend, AW, and, BA, by his next friend, CB, | § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | CIVIL ACTION NO. 5:16-cv-1235-OLG |
| CHARLES SMITH, Executive Commissioner, Texas Health and Human Services Commission; and GARY JESSEE, Texas Medicaid Director, both in their official capacities only, | § § § § § § § | |
| *Defendants.* | § | |

**PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to Federal Rule of Civil Procedure 65, Plaintiffs respectfully file this Motion for Preliminary Injunction, seeking to enjoin Defendants from continuing to deny Plaintiffs their statutory right to receive medically necessary treatment for their autism spectrum disorder. In support, Plaintiffs would show:

**I. INTRODUCTION**

Plaintiffs X.W., K.R.W. and B.A. are all young children who have been diagnosed with autism spectrum disorder (ASD). According to the United States Centers for Disease Control and Prevention, ASD

> is a developmental disability that is caused by differences in how the brain functions. People with ASD may communicate, interact, behave, and learn in different ways. Signs of ASD begin during early childhood and usually last throughout a person's life…. The term 'spectrum' in ASD means that each person can be affected in different ways, and symptoms can range from mild to severe. People with ASD share some similar symptoms, such as difficulties with social interaction, difficulties with communication, and highly focused interests

and/or repetitive activities. How the symptoms affect a person's functioning depends on the severity and combination of those symptoms.[1]

See also, Martinez Affidavit at ¶ 4 (Exhibit A), Svoboda Declaration at ¶ 4 (Exhibit B).

Plaintiffs have been assessed to have a medical need for Applied Behavior Analysis (ABA) to treat their ASD. Martinez Affidavit at ¶¶ 7, 9. Texas Medicaid acknowledges that ABA is an essential treatment for children with ASD, having told the Texas Legislature that Applied Behavior Analysis "is a treatment that uses behavioral principles to evaluate and teach socially relevant behavior and new skills and decrease desirable behaviors through positive reinforcement. It is the *most recommended, evidence-based treatment*" for autism spectrum disorder.[2] (emphasis added).

Plaintiffs are all eligible Medicaid beneficiaries who are entitled to all medically necessary services, including ABA, under the Early and Periodic Screening, Diagnosis, and Treatment ("EPSDT") program for Medicaid beneficiaries under the age of twenty-one. Exhibits, Affidavit of CB at ¶ 6 (BA) (Exhibit D); Affidavit of AW at ¶ 6 (XW and KRW) (Exhibit E). Nevertheless, Texas Medicaid is refusing to cover or make available ABA for the Plaintiffs, despite their medical need for such preventative or rehabilitative therapy, in violation of Title XIX of the Social Security Act, 42 42 U.S.C. § 1396d(r)(5), and its implementing regulations.

Defendant Smith is the Executive Commissioner of the Texas Health and Human Services Commission, which is designated as the "single state agency" responsible for administering the state's Medicaid program. Defendant Jessee is the Texas Medicaid Director (Defendants will be referred to collectively as "Texas Medicaid").

---

[1] *Available at* http://www.cdc.gov/ncbddd/autism/documents/comm-report-autism-what-is.pdf
[2] *Available at* https://hhs.texas.gov/sites/hhs/files/documents/about-hhs/communications-events/news/fy18-19-lar.pdf at page 140 of 491. (Attached hereto as Exhibit C)

Plaintiffs seek preliminary injunctive relief from this Court because their conditions will deteriorate or regress, and they will suffer irreparable harm, if they do not promptly receive the comprehensive ABA services that they have been prescribed.  Because early behavioral intervention and treatment is critical for children with ASD, it is imperative that ABA be provided as soon as possible.

The legal issue presented by Plaintiffs in the underlying case is straight forward: can Texas Medicaid categorically exclude coverage of ABA, fail to provide these children with ABA, and fail to inform them of ABA as a Medicaid service, even though ABA is medically necessary to treat children with ASD?  As shown below, Plaintiffs can establish a substantial likelihood of success on the merits, that they face a threat of irreparable injury to their health if the requested injunction is not granted, that their threatened injuries easily outweigh any threatened harm to Defendants if the injunction is granted, and that the grant of medical care will not disserve the public interest.

Plaintiffs have tried to avoid the need for the Court's early action in this case.  Plaintiffs' lead counsel wrote to the Chief Counsel for the Medicaid Program in October to request ABA for each of the Plaintiffs.  She got no response.  She wrote again on December 6, 2016, to forward to the Chief Counsel a copy of the complaint in this case and to again request initiation of ABA for the Plaintiffs.  She asked for a response by Monday, December 12, 2016.  Exhibit F. Defendants' attorney, Sean Flammer, wrote to Plaintiffs' counsel on December 12, 2016.  He did not agree that the Medicaid Program would provide the ABA that the Plaintiffs need while this

case is pending.³  Moreover, this morning before filing this Motion, Plaintiffs' lead counsel called Mr. Flammer, who advised that Defendants oppose this motion.

Because Defendants are continuing to refuse to provide Plaintiffs with the ABA they medically need, Plaintiffs urge this Court to grant this motion for preliminary injunctive relief.

## II. STATEMENT OF FACTS

**Autism Spectrum Disorder (ASD):**  According to Melisssa Svoboda, MD, "[a]utism spectrum disorder (ASD) is first and foremost difficulty with social skills…. In order to have ASD, you have to have a significant deficit in social skills and communication, above and beyond what would be expected for your intelligence level."  Svoboda Declaration, ¶ 4.⁴

Andrew Martinez, PhD continued, "ASD is … characterized by deficits in social communication and interaction and a pattern of restricted and repetitive behaviors."  Martinez Affidavit at ¶ 4.⁵  It includes "difficulty with nonverbal communication and understanding the 'back and forth' of social interactions."  *Id*.  People with ASD "struggle to develop, maintain, and establish social relationships.  They often exhibit stereotyped or repetitive movements or vocalizations (e.g., hand flapping, echolalia)."  *Id*.  Other symptoms may include trouble adjusting to changes in routine or environment, restricted interests and increased or lessened sensitivity to sensory input.    Martinez Affidavit at ¶ 4.

People with autism spectrum disorder "vary based on severity levels.  Severity is based on a 1-3 scale";  Level 1 means mild symptoms (noticeable symptoms "cause some difficulties"),

---

³ Defendants argue that Plaintiffs should have requested prior authorization of the ABA that they need.  This would have been a futile act, however, because Defendants do not provide ABA.  There is "no there there" to be the subject of a prior approval request.

⁴ Dr. Svoboda is a pediatric neurologist who specializes in neurodevelopment.  She is the medical director of the Comprehensive Autism Program at The Children's Hospital of San Antonio.  She is also a member of the faculty of Baylor College of Medicine's Pediatrics Department in San Antonio. Svoboda Declaration, ¶ 2.

⁵ Dr. Martinez is an Assistant Professor of Pediatrics at Baylor College of Medicine in San Antonio.  He is the co-founder and co-director of the Autism Clinic at The Children's Hospital of San Antonio, where he also provides clinical psychology services.  Martinez Affidavit, ¶¶ 2-3.

Level 2 means moderate symptoms (obviously noticeable symptoms "interfere a great deal with functioning across settings") and Level 3 means severe symptoms ("severe impairment in functioning"). Martinez Affidavit, ¶ 4.

**Plaintiffs Have Been Diagnosed with Autism Spectrum Disorder:** Plaintiffs have all been diagnosed with autism spectrum disorder, as follows:

"BA's diagnoses are:

    i.    Autism Spectrum Disorder

        1.  Social Communication – Level 1:  requiring support

        2.  Restricted/Repetitive Behaviors – Level 3:  Requiring very substantial support

XW's diagnoses are:

    i.    Autism Spectrum Disorder

        1.  Social Communication -  Level 3:  Requiring very substantial support

        2.  Restricted/Repetitive Behaviors – Level 3:  Requiring very substantial support

KRW's diagnoses are:

    1.    Autism Spectrum Disorder

        1.  Social Communication – Level 2:  Requiring substantial support

        2.  Restricted/Repetitive Behaviors – Level 2:  requiring substantial support"

Martinez Affidavit at ¶ 7.

**Applied Behavior Analysis (ABA) Treatment Is Medically Necessary for Children with Autism Spectrum Disorder.** "There is no cure for ASD, but there are some very good therapies and treatments that can make a profound improvement." Svoboda Declaration, ¶ 4.  As the Defendants have explained to the Texas Legislature, ABA "is a treatment that uses behavioral principles to evaluate and teach socially relevant behavior and new skills and decrease

undesirable behaviors through positive reinforcement.  It is the *most recommended, evidence-based treatment*" for ASD.  (Emphasis added.)  Exhibit C.

According to Dr. Svoboda, "[b]ecause of how much improvement we see when ABA is given to those with ASD, the [American Academy of Pediatrics] deems it medically necessary for children with ASD."  Svoboda Declaration, ¶ 7, *see also, Id.*,¶ 5-7.  Dr. Svoboda continued,

> ABA (applied behavioral analysis) therapy is the best current treatment for those with ASD. It involves a highly trained therapist tailoring a behavior training program based upon that child's challenges. It focuses on improving communication and adaptive skills (skills needed for day-to-day life like using the bathroom, eating, etc.). Because ASD is a spectrum, the therapist must be trained in many different approaches and understand how to craft a program for that particular child. The therapists must have at least a master's degree, some have PhDs…. Not only is it wonderful to have a therapy that is not a medication, but it is evidenced-based (meaning that it has actually been proven to work!). Multiple, high-quality studies have looked at ABA in ASD children and have seen dramatic improvements in IQ, language, and adaptive skills. As physicians, we try our best to only recommend things that are evidence-based because we want to be sure that if a family and child are subjected to something, that it actually works.

Svoboda Declaration, ¶ 4; *see also*, Martinez Affidavit at ¶ 8 (ABA is the "preferred, evidence based treatment" for ASD).

After extensive review and research, the "American Academy of Pediatrics recommend[ed] intensive, comprehensive ABA therapy for every child with an ASD diagnosis." Svoboda Declaration, ¶ 5.  Indeed, children with ASD need about 20-40 hours of ABA each week for many years.  *Id.*, ¶ 7.  This is because "it takes a long time to change a behavior."  *Id.*, ¶ 4.  Dr. Svoboda concludes that ABA "can truly change a family and the person with ASD. In my opinion, it is as vital a therapy as insulin is to diabetes."  Svoboda Declaration, ¶ 8.

Prompt initiation of treatment is also important.  Comprehensive treatment, including ABA, should begin within 60 days of diagnosis "because evidence shows that the earlier treatment leads to better outcomes later on."  *Id*.  Dr. Martinez added research "has shown that

6

intensive, early intervention increases the chances of long-term success. Withholding ABA can be detrimental to … long term success." Martinez Affidavit, ¶ 10. Indeed, '[a]ll three Plaintiffs need ABA as soon as possible," as explained in more detail below. *Id.*

### III.   PRELIMINARY INJUNCTION

A plaintiff seeking a preliminary injunction must show: (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable injury if the injunction is not granted, (3) that the threatened injury if the injunction is denied outweighs the threatened harm that will result if the injunction is granted, and (4) that the grant of the preliminary injunction will not disserve the public interest. *Planned Parenthood Gulf Coast, Inc. v. Gee*, 837 F.3d 477, 488 (5th Cir. 2016). "A preliminary injunction aims to 'prevent irreparable injury so as to preserve … [a] court's ability to render a meaningful decision on the merits.'" *Planned Parenthood Gulf Coast, Inc. v. Kliebert*, 141 F.Supp.3d 604, 635, quoting *Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009). "Preliminary injunctive relief may be necessary to insure that a remedy may be available" at some future date. *United States v. Alabama*, 791 F2d 1450, 1460 (11th Cir. 1986).

A.   **Plaintiffs have a substantial likelihood of success on the merits**

   1.   **Plaintiffs have a private right of action to enforce the EPSDT provisions of the Medicaid Act under § 1983**

It is well settled that Plaintiffs can enforce their rights under the EPSDT provisions of the Medicaid Act through § 1983. In *S.D. v. Hood*, 391 F3d. 581, 603-604 (2004), the Fifth Circuit considered this precise issue, and held that the EPSDT provisions of the Medicaid Act are enforceable in an action brought under § 1983 (the EPSDT provisions require that "health care and services must be provided to all eligible recipients under the age of twenty-one" and have "precisely the sort of 'rights-creating' language identified in *Gonzaga*."). All federal circuit courts of appeal to have ruled on this issue have held the same, that the EPSDT provisions create

7

private rights that are enforceable under § 1983. *See Westside Mothers v. Haveman*, 454 F.3d 532 (6th Cir. 2006) (holding EPSDT plaintiffs could enforce § 1396a(a)(A)(10)(A) through § 1983), *same case*, 289 F.3d 852, 863-64 (6th Cir. 2002) (allowing EPSDT beneficiaries to enforce § 1396a(a)(43)); *Pediatric Specialty Care, Inc. v. Arkansas Dep't of Human Servs.*, 293 F.3d 472, 477-79 (8th Cir. 2002) (allowing enforcement of the EPSDT provisions), *same case*, 443 F.3d 1005, 1008 (8th Cir. 2006) (noting that children have enforceable rights to EPSDT), *vacated on other grounds sub nom. Selig v. Pediatric Specialty Care*, 551 U.S. 1142 (2007).

### 2. Likelihood of Success

With Plaintiffs having a private right of action to bring this § 1983 action to enforce their federal rights under the Medicaid Act, the next question for the Court is whether Plaintiffs have a substantial likelihood of success of the merits. Because the EPSDT provisions and relevant case law support Plaintiffs' claims, they have substantial likelihood of success on the merits.

#### i. Statutory background

Medicaid is a medical assistance program that was established in 1965 by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v ("the Medicaid Act"). Cooperatively funded by the federal and state governments, Medicaid provides health care coverage to specified categories of low-income individuals meeting certain criteria. *See id.* Texas elected to participate in the Medicaid program in 1967.

State participation in Medicaid is voluntary, but once a state agrees to participate in the program, it must administer a state plan that meets federal requirements. *Frew v. Hawkins*, 540 U.S. 431 433 (2004). One requirement is that the state "must have an Early and Periodic Screening, Diagnosis, and Treatment (EPSDT) program." *Id.* at 433 (citing to 42 U.S.C. 1396a(a)(43), 1396d(r)). As the Supreme Court explained, "EPSDT programs provide health

care services to children to reduce lifelong vulnerability to illness or disease. The EPSDT provisions of the Medicaid statute require participating States to provide various medical services to eligible children, and to provide notice of the services." *Id.* at 433-434.

The Fifth Circuit described EPSDT as "a comprehensive child health program designed to assure the availability and accessibility of health care resources for the treatment, correction and amelioration of the unhealthful conditions of individual Medicaid recipients under the age of twenty-one." *S.D. v. Hood*, 391 F.3d at 586 (citing CMS State Medicaid Manual § 5010.B). "The natural reading of § 1396d(r)(5)'s phrases is that all of the health care, services, treatments, and other measures described by § 1396d(a) must be provided by the state Medicaid agencies when necessary to correct or ameliorate unhealthful conditions discovered by screening, regardless of whether they are covered by the state plan." *Id.* at 589.

"Accordingly, every Circuit which has examined the scope of the EPSDT program has recognized that states must cover every type of health care or service necessary for EPSDT corrective or ameliorative purposes that is allowable under § 1396d(a)."[6] *Id.* (citing *Collins v. Hamilton*, 349 F.3d 371, 376 n.8 (7th Cir. 2003) (a state's discretion to exclude services deemed 'medically necessary' . . . has been circumscribed by the express mandate of the statute")); *Pittman by Pope v. Sec'y, Fla. Dep't of Health & Rehab.*, 998 F.2d 887, 892 (11th Cir. 1993) (1989 amendment adding § 1396d(r)(5) took away any discretion state might have had to exclude organ transplants from the treatment available to individuals under twenty-one);

---

[6] Even prior to the 1989 amendment of the Act, which clarified that states must provide all mandatory and optional services to EPSDT beneficiaries, the Fifth Circuit Court of Appeals recognized that the Medicaid Act mandates Texas Medicaid to affirmatively and aggressively remedy the health problems of Texas children participating in the Medicaid program. *Mitchell v. Johnson*, 701 F.2d 337, 347-348 (5th Cir. 1983) (citing *Stanton v. Bond*, 504 F.2d. 1246, 1250 (7th Cir. 1974)); *see also,* Introduction to the Final Regulation Guidelines for the EPSDT Program, issued June 28, 1972 as part of the Medical Assistance Manual, Part 5, Sections 5-70-00, *et seq.* (through the EPSDT program "Congress intended to require states to take aggressive steps to screen, diagnose and treat children with health problems"). The *Mitchell* court found that Texas Medicaid, through its reduction and termination of certain dental services for children, had "ignored the preventive and restorative purposes of the EPSDT legislation" and "unduly frustrated" these purposes. *Mitchell,* 701 F.2d at 348-351.

9

*Pediatric Specialty Care, Inc. v. Arkansas Dep't of Human Servs.*, 293 F.3d 472, 480-81 (8th Cir. 2002) (state must provide EPSDT coverage for "early intervention day treatment" as part of § 1396(a)(13)'s "rehabilitative services category because program was structured to ameliorate conditions and strengthen skills children learn in therapy); *Pereira v. Kozlowski*, 996 F.2d 723, 725-26 (4th Cir. 1993) ("in section 1396d(r)(5), the Congress imposed upon the states, as a condition of their participation in the Medicaid program, the obligation to provide to children under the age of twenty-one all necessary services, including transplants."). *See also*, *Mitchell v. Johnson*, 701 F.2d at 346-348; *Miller by Miller v. Whitburn*, 10 F.3d 1315, 1318 n.4 (7th Cir. 1993); *Philadelphia Welfare Rights Org. v. Shapp*, 602 F.2d 1114, 1121-22 (3rd Cir. 1979); *Chisholm v. Hood*, 133 F.Supp.2d 894, 898 (E.D. La. 2001) (finding that EPSDT includes behavioral and psychological services, rendered by licensed psychologists, to children with autism); *Chappell by Savage v. Bradley*, 834 F. Supp. 1030, 1033 (N.D. Ill. 1993); *McLaughlin v. Williams*, 801 F. Supp. 633, 637 n.3 (S.D. Fla. 1992); *Doe v. Pickett*, 480 F. Supp. 1218, 1221 (S.D. WVA. 1979); *Biewald v. Maine*, 451 A.2d 98 (Me. 1982); *Persico v. Maher*, 465 A.2d 308, 313-14 (Conn. 1983); *Brooks v. Smith*, 356 A.2d 723, 728 (Me. 1976); *Smith v. Benson*, 703 F. Supp. 2d 1262, 1279 (S.D. Fla. 2010) (State must provide coverage for incontinence diapers and briefs to EPSDT-eligible children who require such supplies as medically necessary to ameliorate their condition).

In sum, ". . . the text of the statute and its legislative history demonstrate that states participating in the Medicaid program must provide all of the health care and services permitted under sec. 1396(a) when necessary to correct or ameliorate a defect or condition discovered by screening." *S.D. v. Hood,* 391 F.3d at 590.

10

### ii.     ABA is covered as part of the EPSDT benefit

As for whether ABA must be covered as part of the EPSDT benefit, all decisions found by the undersigned counsel agree that ABA is a covered benefit.  For example, the court in *Garrido v. Dudek* reasoned that to determine "if [Florida Medicaid's] decision not to cover ABA for children with autism and ASD violates the EPSDT provisions in the Medicaid Act, [the] statutory framework presents two questions: (1) is ABA among those services which can be covered under 42 U.S.C. § 1396d(a), and (2) is ABA necessary to correct or ameliorate an illness for a Medicaid recipient under age 21?" *Garrido v. Dudek*, 864 F.Supp.2d 1314, 1318 (S.D. Fla. 2012), *aff'd* 731 F.3d 981 (11th Cir. 2013), *on remand* F.Supp.2d 1275, 1280 (S.D. Fla. 2013) (permanent injunction).  The *Garrido* court answered both questions in the affirmative, finding that ABA falls within the scope of 42 U.S.C. § 1396d(a)(13) (as a preventative or rehabilitative service) and that ABA is "an effective and significant treatment to prevent disability and restore developmental skills to children with autism and ASD."  *Id.* at 1280, 1287.  Similarly, the court in *Chisholm ex rel. CC v. Kliebert,* 2013 WL 3807990, at *22 (E.D. La. July 18, 2013), found that "ABA therapy, when recommended by a physician or licensed psychologist, constitutes 'medical assistance' under Section 1396d(a)(13) . . ." and that "ABA therapy is medical assistance that was necessary to correct or ameliorate the debilitating effects of [the plaintiffs'] autism."  *See also Parents League for Effective Autism Treatment v. Jones-Kelly*, 339 Fed. App'x 542 (6th Cir. 2009) (affirming preliminary injunction holding that ABA was likely mandated in Ohio EPSDT as either a rehabilitative or preventative service); *Hummel v. Ohio Dep't of Job & Family Servs.*, 844 N.E.2d 360 (Ohio App. 6th 2005) (ABA must be covered by Medicaid when medically necessary).

In August 2016, a federal district court in Hawaii concluded that Hawaii Medicaid had delayed in covering ABA, "despite the Medicaid Act's early and periodic screening, diagnostic and treatment (EPSDT) mandate, 42 U.S.C. § 1396 et seq., and despite recognizing ABA treatment's effectiveness and qualification for Medicaid coverage." *J.E., et al. v. Wong*, Case No. 1:14-cv-00399-HG-KJM, at 45 (Dist. of HA, August 12, 2016). The court also held that Hawaii Medicaid "did not fulfill the Medicaid Act's requirement that eligible persons be informed effectively of EPSDT services." *Id.*

Because ABA falls within the scope of 42 U.S.C. § 1396d(a)(13) as a preventative or rehabilitative service and is an effective and significant treatment to prevent disability and restore developmental skills to children with autism and ASD, Texas Medicaid simply lacks the discretion to deny coverage of ABA to Medicaid beneficiaries under the age of 21 who have a medical need for such therapy. As such, Plaintiffs are substantially likely to succeed on the merits of their Medicaid Act claims.

**B.     Plaintiffs will suffer irreparable harm if they continue to be denied their medically necessary treatment**

Because Plaintiffs are being denied medically necessary treatment for their significant disabilities, they easily satisfy the "irreparable harm" element. In *Planned Parenthood,* the Fifth Circuit held that the plaintiffs would suffer irreparable harm even if they were only unable to receive medical care from the Medicaid provider of their choice. *Planned Parenthood*, 837 F.3d at 500-501. Here, Plaintiffs are being entirely denied medically necessary services, not simply from the medical provider of their choice. Because Plaintiffs are being denied access to needed medical care, they will suffer irreparable harm absent entry of a preliminary injunction. In *M.R. v. Dreyfus*, the Ninth Circuit reiterated that "[w]e have several times held that beneficiaries of public assistance may demonstrate a risk of irreparable injury by showing that enforcement of a

proposed rule 'may deny them needed medical care.'" *M.R. v. Dreyfus*, 697 F.3d 706, 732 (9th Cir. 2011) (quoting *Independent Living Ctr. of S. Cal. v. Maxwell-Jolly*, 572 F.3d. 644, 658 (9th Cir. 2009). *See also V.L. v. Wagner*, 669 F. Supp. 2d 1106, 1121 (N.D. Cal. 2009) ("[n]umerous federal courts have recognized that the reduction or elimination of public medical benefits irreparably harms the participants in the programs being cut.); *Beltran v. Myers,* 677 F.2d 1317, 1322 (9th Cir.1982) (holding that possibility that plaintiffs would be denied Medicaid benefits sufficient to establish irreparable harm); *Newton–Nations v. Rogers,* 316 F.Supp.2d 883, 888 (D. Ariz. 2004) (citing *Beltran* and finding irreparable harm shown where Medicaid recipients could be denied medical care as a result of their inability to pay increased co-payment to medical service providers); *Edmonds v. Levine,* 417 F.Supp.2d 1323, 1342 (S.D. Fla. 2006) (finding that state Medicaid agency's denial of coverage for off-label use of prescription pain medication would irreparably harm plaintiffs); *Cota v. Maxwell–Jolly,* 688 F. Supp. 2d 980, 997 (N.D.Cal.2010) ("[T]he reduction or elimination of public medical benefits is sufficient to establish irreparable harm to those likely to be affected by the program cuts.").

In issuing its permanent injunction, the court in *Garrido* recognized that it was imperative that children with ASD in Florida "receive ABA immediately to prevent irreversible harm to these children's health and development." *Garrido*, 864 F. Supp. 2d at 1327. The court in *Chisholm* similarly found that ABA "must be provided early to achieve . . . maximum effect …." *Chisholm*, 3013 WL 3807990 at *24. The same is true here. As explained in the attached affidavits and declarations, the Plaintiffs have an immediate medical need for comprehensive ABA to prevent irreparable harm. For example, Dr. Martinez describes the reasons that Plaintiffs need ABA in his Paragraph 9. In Paragraph 10, he continued that,

> All 3 Plaintiffs need ABA as soon as possible. Research has shown that intensive, early intervention increases the chances of long-term success. Withholding ABA

can be detrimental to their long-term success.  Moreover, in BA's case, his social functioning is declining due to social deficits and restrictive and repetitive behaviors.  Without ABA, if this trajectory continues, his social skills may continue to decline.  In KRW's case, his self-injurious behaviors need to be addressed before he begins seriously hurting himself or others.  If we do not decrease these behaviors, the older and bigger he gets, the greater the likelihood he can hurt himself or others.  In XW's case, he has severe deficits that warrant immediate treatment.

**C.    In balancing the equities, the balance easily weighs in Plaintiffs' favor**

In a balance of the harms, the outcome weighs unquestionably in Plaintiffs' favor. Plaintiffs XW, KR.W, and BA will continue to suffer harm from the deprivation of medically necessary services that are essential to their health.  Even delayed initiation of ABA treatment will harm them because "individuals with ASD should receive comprehensive intervention (including intensive ABA) within 60 days of identifying that they have the diagnosis. This is because evidence shows that the earlier treatment leads to better outcomes later on."  Svoboda Declaration at ¶ 6.  Dr. Martinez agrees; "[a]ll 3 Plaintiffs need ABA as soon as possible…. [I]ntensive, early intervention increases the chances of long-term success."  Martinez Affidavit at ¶ 10.  For each child, harm will ensue if treatment is delayed:

> BA's social skills will continue to decline even more than they already have.
>
> KRW's self-injurious behavior will worsen.  If allowed to continue unabated as he ages and grows, he will become big enough to seriously hurt himself or others.
>
> XW's severe deficits "warrant immediate treatment."

*Id.*  Plaintiffs have filed this action simply to compel Defendants to comply with controlling federal law.  As the Fifth Circuit recognized in *Planned Parenthood*, a state agency "simply does not have a legitimate interest in administering the state's Medicaid program in a way that violates federal law." *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 837 F.3d at 501.  The Court continued that "there is a robust public interest in safeguarding access to healthcare for

those eligible for Medicaid, whom Congress has recognized as 'the most needy in the country.'" *Id.*, again quoting *Maxwell-Jolly*, 572 F.3d at 659 (quoting *Schweiker v. Hogan*, 457 U.S. 569, 590 (1982)). As the noted by the Court in *Planned Parenthood,* the Fourth Circuit reached a similar conclusion: "the public interest lies with safeguarding public health rather than assuaging North Carolina's budget woes." *Pashby v. Delia*, 709 F.3d 307, 331 (4th Cir. 2013).

### D.      It is in the public interest to safeguard access to healthcare for those eligible for Medicaid

The issuance of a preliminary junction will simply ensure that these young Plaintiffs will not be denied medically necessary services pending this litigation.  It is in the public interest for Defendants to comply with federal law, i.e., the Medicaid Act.  Further, as explained by the Fifth Circuit in *Planned Parenthood*, "the public interest weighs in favor of preliminarily enforcing the Individual Plaintiffs' rights and allowing some of the state's neediest individuals to continue receiving medical care …."  837 F.3d at 502.  The Court concluded that: "We emphasize that 'there is a legitimate public interest in safeguarding access to health care for those eligible for Medicaid.'" *Id.* (quoting *Maxwell-Jolly*, 572 F.3d at 659).  Because Plaintiffs seek to enforce their rights under the Medicaid Act, and receive medically necessary ABA, it is in the public interest to issue preliminary injunctive relief.  As Dr. Martinez stated, "[i]t is in the public interest for these 3 plaintiffs to receive ABA therapy.  There is research highlighting that ABA therapy can decrease the amount of funding needed to care for these children long-term.  Some children who receive ABA may not require as much government funding in the future (medical and/or educational)."  Martinez Affidavit, ¶ 11; *see also* Dr. Svoboda Declaration, ¶ 7 (early intensive ABA can help avoid costly special education services, and improve the life of the child and the family).  Dr. Svoboda concluded that ABA "can truly change a family and the person with ASD.  In my opinion, it is as vital a therapy as insulin is to diabetes." *Id.,* ¶ 9.

**E.     The Court should waive the bond for these indigent, disabled Plaintiffs**

Plaintiffs, indigent children, request that they not be required to post any cash bond, and the Court has the discretion to issue a preliminary injunction without requiring the Plaintiffs to give security. *See Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569 F.2d 300, 302-303 (5th Cir. 1978) (The amount of bond "is a matter of discretion of the trial court; it may elect to require no security at all.") (cited approvingly in *Gordon v. City of Houston, Texas*, 2015 WL 138115 at *16 (S.D. Tex. January 9, 2015).

Courts have used their discretion to waive the bond requirement for indigent plaintiffs. *See e.g., Bass v. Richardson,* 338 F. Supp. 478, 490 (S.D.N.Y. 1971) ("It's clear to us that indigents, suing individually or as class plaintiffs, ordinarily should not be required to post a bond under Rule 65(c)"); *Denny v. Health and Soc. Servs. Bd. of the State of Washington*, 285 F. Supp. 526, 527 (E.D. Wis. 1968) ("Poor persons . . . are by hypothesis unable to furnish security as contemplated by Rule 65(c), and the court should order no security in connection with this preliminary injunction.").

Because Plaintiff children in this case are indigent and disabled, and seek only declaratory and injunctive relief to vindicate their rights under the Medicaid Act, this Court should not require Plaintiffs to give security.

## V.  CONCLUSION

For the reasons set forth above, this Court should preliminary enjoin Defendant from continuing to deny Plaintiffs medically necessary ABA treatment.

Respectfully submitted,

/s/ Peter Hofer
PETER HOFER
State Bar No. 09777275
DISABILITY RIGHTS TEXAS
2222 West Braker Lane
Austin, Texas 78758
(512) 454-4816 (Phone)
(512) 454-3999 (Fax)
phofer@drtx.org

SUSAN F. ZINN
Texas Bar No. 07015500
Plaintiffs' Attorney in Charge
TEXAS RIOGRANDE LEGAL AID, INC.
Medical Legal Assistance for Families
Mailing address: 1111 N. Main Street
San Antonio, TX 78212
Tel: (210) 704-8730
Fax: (210) 704-8743
szinn@trla.org

TERRY ANSTEE
State Bar No. 24080619
DISABILITY RIGHTS TEXAS
523 N. Sam Houston Pkwy E., STE 310
Houston, Texas 77060
(832) 681-8214(Phone)
(888) 398-0018 (Fax)
tanstee@drtx.org

**ATTORNEYS FOR PLAINTIFFS**

**CERTIFICATE OF CONFERENCE**

I hereby certify that on December 13, 2016, counsel for Defendants advised that Defendants oppose this motion.

/s/ Peter Hofer
PETER HOFER

17

## CERTIFICATE OF SERVICE

I hereby certify that on December 13, 2016, a true and correct copy of the foregoing document was served by email to counsel for Defendants:

Sean Flammer
Assistant Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Sean.Flammer@oag.texas.gov

    /s/ Peter Hofer
PETER HOFER